Argued and submitted February 21, 2001, affirmed January 9, 2002

## STATE OF OREGON,
*Respondent,*

*v.*

## MELVIN FRANCIS GODDARD,
*Appellant.*

20-99-02171; A107154

37 P3d 1046

Jesse Wm. Barton, Chief Deputy Public Defender, argued the cause for appellant. With him on the brief was David E. Groom, Public Defender.

Kaye E. McDonald, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Landau, Presiding Judge, and Linder and Brewer, Judges.

LANDAU, P. J.

## LANDAU, P. J.

Defendant appeals a judgment of conviction for first-degree sodomy and endangering the welfare of a minor. He assigns error to the trial court's denial of a motion for a judgment of acquittal on the endangering charge. We affirm.

We state the facts in the light most favorable to the state, which prevailed at trial. *State v. Cervantes*, 319 Or 121, 125, 873 P2d 316 (1994). Defendant lived with the victim, who was a six-year-old girl, and her mother. The victim's mother left her in defendant's care for the day. Defendant went into his bedroom to watch a video, "Gang Bang Orgies," which depicts multiple acts of sexual intercourse. As he watched the video, he became aroused. The victim watched from the doorway. Defendant told her to touch his penis with her tongue, and she did so.

Count 2 of the indictment charged defendant with endangering the welfare of a minor, ORS 163.575, alleging that defendant "did unlawfully and knowingly permit [the victim], an unmarried person under the age of eighteen years, to witness an act of sexual conduct." At trial, the state's theory was that defendant had permitted the victim to "witness an act of sexual conduct" by allowing her to watch the video. Defendant moved for a judgment of acquittal, arguing that the statutory reference to "witness an act of sexual conduct" refers to witnessing *live* sexual conduct only. The trial court denied the motion. The jury was instructed in the terms of the statute, that is, the court stated that, to find defendant guilty of endangerment, it must find that he "knowingly permitted [the victim] to witness an act of sexual conduct." The court made no reference to a particular theory of the state's case.

On appeal, defendant reiterates his argument that the statute requires that a victim witness live sexual conduct. The state concedes that, under *State v. Atkeson*, 152 Or App 360, 366, 954 P2d 181 (1998), defendant is correct. The state argues that we nevertheless should affirm, because there was evidence that defendant caused the victim to witness a live act of sexual conduct. According to the state, defendant caused her to witness a live act of sexual conduct when he

persuaded her to touch his penis. Defendant argues that the state should not be permitted to shift its theory of the case and that, in any event, causing a victim to engage in sexual conduct is not causing her to "witness" it.

■ In reviewing the denial of a motion for a judgment of acquittal,

> "we view the evidence in the light most favorable to the state to determine whether any rational trier of fact, accepting reasonable inferences and making reasonable credibility choices, could have found, beyond a reasonable doubt, the essential elements of the offense."

*State v. Metcalfe*, 172 Or App 501, 503, 19 P3d 374 (2001). The initial question in this case is whether, in examining whether the jury could have found the essential elements of the offense, we are limited to the evidence that the state argued to the jury in support of its "theory of the case." Defendant has cited no case so limiting our scope of review, and we are aware of none.

■ In *State v. Addicks*, 30 Or App 249, 255, 566 P2d 1212, *rev den* 280 Or 521 (1977), we held that:

> "A jury does not resolve the question of guilt or innocence simply by deciding whether the state's 'theory of the case' has been proved beyond a reasonable doubt. It determines whether a defendant is guilty or innocent by applying the law—as explained by the judge—to what it finds the ultimate facts of the case to be."

*See also State v. Courtier*, 166 Or App 514, 519 n 5, 997 P2d 894 (2000) ("a motion for judgment of acquittal tests only the sufficiency of the evidence to support the verdict, not the sufficiency of the evidence to satisfy the instructions"). That suggests that, consistent with our constitutional obligation to reverse a jury verdict only when there is "no evidence" to support the verdict, Or Const, Art VII (Amended), § 3, we must examine the entire record to determine whether it contains evidence from which a jury *could have* found all of the necessary elements, regardless of which items of evidence the state or the defendant chose to emphasize in their arguments at trial.

Illustrative of that scope of review is *State v. Hull*, 286 Or 511, 595 P2d 1240 (1979). In that case, the defendants were charged with stealing cattle from Ronald Doman while on a deer hunting party. At trial, there was evidence that the stolen cattle could have been the property of any of several other ranchers in the area. The defendants moved for a judgment of acquittal on the ground that the state had failed to prove that they had stolen *Ronald Doman's* cattle. The trial court denied the motion, and the Supreme Court affirmed, commenting that "[i]t is immaterial whose property the animal was, as long as it was the property of someone other than the defendants," as the relevant statute requires. *Id.* at 519. Regardless of the state's theory, in other words, the sole question on review of the denial of a motion for a judgment of acquittal is whether the record contains evidence sufficient to support the verdict.

█      We therefore proceed to the merits of the state's contention that causing a victim to participate in an act of sexual conduct satisfies the element of causing a victim to "witness" such conduct within the meaning of ORS 163.575(1)(a). That statute provides that a person commits the crime of endangering the welfare of a minor if the person knowingly "[i]nduces, causes or permits an unmarried person under 18 years of age to witness an act of sexual conduct * * * as defined by ORS 167.060." ORS 167.060(10), in turn, defines "sexual conduct" to include "any touching of the genitals * * * in an act of apparent sexual stimulation or gratification."

█      The statute does not define the term "witness." Consistent with familiar principles of statutory construction, *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993), we turn to the ordinary meaning of the term. The dictionary defines the verb "to witness" as "to see or know by reason of personal presence : have direct cognizance of : observe with one's own eyes or ears : be present as an observer at." *Webster's Third New Int'l Dictionary*, 2627 (unabridged ed 1993). Nothing in the ordinary meaning of the term suggests that a participant in an event is not a witness to it. Certainly, a victim who participates in an act of sexual conduct sees or hears the conduct, knows of it by personal presence, and has direct cognizance of it. Indeed, it is

common for victims to testify at trial as "witnesses" to the crimes committed against them. The state's reading of the statute thus is entirely consistent with the ordinary meaning of its language.

Even assuming, for the sake of argument, that the statute is in some way ambiguous, the legislative history offers no support for the suggestion that the term "witness" means anything other than what it ordinarily means. ORS 163.575(1) was part of the comprehensive criminal code revision of 1971. The Report of the Criminal Law Revision Commission of 1970, section 177, p 161, explains:

> "Paragraph (a) of subsection (1) prohibits inducing, causing or permitting a person less than 18 years old to view an act of sexual conduct or sadomasochistic abuse. * * * *The subsection does not require participation or active conduct on the part of the minor*; exposure to the prohibited acts is considered harmful per se."

(Emphasis added.) The phrasing of the report clearly suggests that, although participation or active conduct is not required, it would suffice. Conversely, nothing in the legislative history suggests that participation in sexual conduct precludes "witnessing" it within the meaning of the statute.

In this case, there is evidence from which a jury could conclude beyond a reasonable doubt that defendant caused the victim to engage in an act of sodomy, clearly an act of "sexual conduct" within the meaning of the statute. In so doing, defendant caused her to "witness" an act of sexual conduct. The trial court, therefore, did not err in denying defendant's motion for a judgment of acquittal.

Affirmed.